Mr. Murphy, you may proceed. Thank you. May it please the Court, Your Honors, I would like to begin by acknowledging the errors of the lower court, one being that the Court admitted certain hearsay statements of Nicholas Martin pursuant to Section 115-10.1 of the Criminal Code, and two, the Court's finding that the evidence was sufficient to prove the defendant guilty of reckless conduct beyond a reasonable doubt. As to the first point, Your Honors, Section 115-10.1 creates an exception to the hearsay rule, allowing prior inconsistent statements in as substantive evidence if it satisfies certain prompts, the one at issue being whether or not the statement narrates, describes, or explains an event or condition of which the witness has personal knowledge. Now, to qualify under the personal knowledge standard, the witness who gives the statement must have observed the events which are the subject of the statement, not merely hearing them and repeating them. Therefore, it was error for the Court to admit the statements given by Nicholas Martin to police when they asked, what did your father do or say he did specifically to the business, in which he said, well, it had something to do with the gas lines. I know I didn't infer that. It had something to do with gas lines. That's the statement. Nicholas Martin had no personal knowledge of anyone doing anything to any gas lines. He didn't witness anything to that effect. Therefore, even if that were inconsistent with Nicholas's prior testimony, that is not admissible pursuant to Section 115-10 because he did not have personal knowledge of the subject of that statement. The same goes for the statement to the effect he was asked something about the tenants. And Nicholas said, his father said, I can get rid of them too. Again, this is not something that Nicholas Martin had any personal knowledge of. Nicholas Martin arrives to the scene later in the day and takes his father away. This is after the alleged act of removing any end caps or messing with any gas lines in any manner. Also, I think the state would try and say, regardless of whether or not the defendant has personal knowledge or the witness had personal knowledge of those statements, that that should come in as a state of mind, except for the hearsay rule. Again, what I think distinguishes this from the case relied upon by the state, which was People v. Wilson, is in People v. Wilson, the defendant's statement was that he was about to burn a screwball out. And this was something that had happened prior to the alleged crime in that case. Therefore, since it was a state of mind exception, it was not outside the personal knowledge of the witness. This is something that the witness says the defendant told him after the alleged events. So it's not where the court can find that it's reliable because someone says they intend to do something and then they went and did it. And therefore, we can say, since he intended to do it, we can infer because it was done that he did it. This is a different type of scenario. This is after the crime. It's similar to an admission. The defendant telling the witness an admission and the witness repeating that. So state of mind is limited to before action, not after action, to explain action. Correct, Judge. Or I believe at least in these circumstances when you're trying to admit a statement as an inconsistent statement from the witness. And also, I don't believe that it is a state of mind because it's not an intention to do anything. Again, because it's after the fact. This is the same as... So state, that's back to my original point, is that state of mind is only relevant to prior action, not as explanation of past action? I would think so, Judge. Why would you think so? Because otherwise you equate it as an admission after the fact. When someone says, I intend to do something and then it's done later, I think that's where the reliability part of it and the court can therefore rely on it. I think when something is done and then someone tries to give a statement of the intention... Are there actions that, because of the state of mind, they are criminal because of the existence of a particular state of mind, but they're not if you can establish there wasn't that state of mind, but they may just be negligent? I'm sorry, could you repeat the question? Ah, darn it. Actions that could be treated as criminal because of the existence or presence of a state of mind, whereas the same action if the state of mind was not established could be merely negligent, not criminal. If you can ponder that, go ahead. That's still open. At any rate, Judge, I wouldn't even agree that that statement, I can get rid of them, is a statement of intent. It's not saying I'm going to do something or I intend to do something. It's just a vague general statement, I can do something. What do you mean with the statement, don't go back in there, it's likely to go kaboom? Is it kaboom, I keep looking at that? Sure, I think the only thing that can be inferred from that is that, and again the evidence showed that this person is extremely intoxicated and is present at the scene. All I think that really shows is that he knows that there's a smell of gas, because he's all over the place in his speech, he's not coherent, he's just saying kaboom, kaboom, over and over, don't go back there. Again, I think that infers that this extremely intoxicated person is aware that there's a smell of gas. With regards to the second issue, Your Honor, even if you found that those statements were properly admitted, there are many, many problems with the evidence being sufficient to find that the defendant did any act to cause the emission of natural gas. Again, it must be proven that the defendant is the one who performed the act. We know that there is gas in the air, but it's never established anywhere in the record where the source of this emission is, and the evidence, even circumstantially, I think falls short of showing that the defendant did anything. What happened was, you have a tenant of the building awake at 6.30, and he smells gas. We don't know how long the gas has been existing, all we know is that he awakes and he smells the gas. He goes down and shuts off one of the mains of the building. He's the one who has tools, he works for a plumbing company. He goes down and shuts off one of the mains, goes back to sleep, wakes up a couple hours later and smells gas again. There's no evidence that the smell had dissipated, that I turned off the main, the smell went away, I went back to sleep, and now it's coming back again. There's just still this smell of natural gas. He goes back down and shuts off the other main. So now both mains to the building are shut off. And then he leaves, he's gone for at least half an hour, as long as two hours, which goes to my point of, it was not excluded that other people were present at the building. But he comes back two hours later and goes back up to the apartment. Someone else arrives at the building and they go back down there. I'm assuming there's still this smell of natural gas because they go and they find some pipes, some disconnected pipes near the furnace and the water heater. There's no testimony that they went back there and they hear gas coming out of the pipe or the smell gets stronger as they go back there. They just assume this may be where the gas is coming from. I see some disconnected pieces and they put them back together. And they use tools. These are the tenants? The tenant, Christopher Campbell, and the defendant's son, who arrived on the scene, I believe, to open the business that day. They actually reestablished those connections? Yes, correct. Those two? Correct. He said it was just screwing on end caps, is that right? There were a few different—as far as whether they're end caps or not, Judge, it's not very clear. He says there are some—he believed there was a three-quarter pipe and there are different parts of it differing in length that he kind of guessed or what looked like how they should go together and put them back together. But he used tools, specifically a pipe wrench, because he worked for a plumbing company, Mr. Christopher Campbell. After they connect that, they relight the pilot to the water heater in the furnace, which is right there. You'd think if that is the source of the emission of the gas, there would have been an explosion right then and there. However, again, now the fire department arrives on the scene a little bit later on. There's still a smell of natural gas coming from somewhere, but it's never established where it comes from. The—Christopher Campbell shows the fire department, Captain Douglas, where he put some pipes back together. The fire department never even inspected the water heater. They never inspected anything over there. When they came in, they said, well, we shut off the oven. We shut off all possibilities of a leak because we were trying to get to the source of it. It was never established where this smell was coming from. Well, I just have a question from a mechanical standpoint. You have two mains, and they're both shut off. In theory, it should be, unless there's a third main somewhere, that should cease the flow of gas, right? Correct. Mechanically. Correct. And so the evidence shows that there's one break between a water heater and a furnace, or is that correct? The testimony was that Christopher Campbell thought that this was a three-quarter inch gas pipe leading up to the water heater or the furnace, and he put that back together. Okay, yeah, it was disconnected. Correct. To the water heater, and what about the furnace, or just the water heater? I don't know if it's clear, Judges, whether the pipe separated to both of them or one of them, but they're both in the same area. Right. You keep talking about tools. Are you suggesting that Mr. Campbell did this? The reason I stress that point is the lower court relied upon the fact that because there's no direct evidence, circumstantially, the court said, I find that something deliberate was done to the pipes because, by common sense, they must have been just unscrewed because they were screwed up. Christopher Campbell merely screwed them up. So therefore, he thinks, common sense, somebody did something intentionally to them by unscrewing them. My point is there are no tools found on the premises or near Mr. Martin at all, and the judge, I think, didn't take into account that tools actually were used in order to screw these pipes back together. I think it's just more reasonable to infer that if you have to use tools, you know, these are gas lines, to screw these pipes on and make sure they're tight, you would have to use tools to unscrew them, not merely your hand. Dr. Edson. Thank you. So your theory is that if all of these hearsay statements are not allowed in as substantive evidence, that just looking at that evidence alone, there's not enough there to establish that Mr. Martin was the person who disconnected pipes. Absolutely. And, Judge, even if those statements are in, I don't think the evidence shows that the defendant is the one who intentionally did anything or placed anybody in danger because it cannot be shown the defendant is the one who did anything to any pipes. Furthermore, it is not shown that that, even if you believe the defendant did that to those pipes that were disconnected, that that was the source of any smell of natural gas. Back to Justice McDay's question, is the most damaging statement that don't go in there, it'll go kaboom? No, Judge, if you're asking what I think the most damning statement would be, I think it would be when Nicholas was asked if your father did anything specific to the business when he says it had something to do with the gas lines. I don't think I inferred that it had something to do with the gas lines. I think that would be the most damning statement. For all those reasons, Judge, I'm asking you to correct the errors of lower court. Thank you. Thank you, Mr. Murphy. Ms. Chaudhary, you may respond. May it please the Court, Counsel, Clerk, On May 12, 2007, the defendant committed reckless conduct by removing the end caps of the gas lines at Dreamer's Pizzeria. The defendant was found guilty in a bench trial of reckless conduct. I have a question. Sure. The end caps. Yes. Now, this was a specific finding by the trial judge? This was a jury trial, right? It was a bench trial. A bench, excuse me. Yes. Is this a finding by, what's the evidence that they were end caps? There's quite a few testimonies from Detective Tim Powers, who was there the day of the incident, and then another police officer, Kurt Stanley, who witnessed firsthand that the gas pipes for the furnace and the water heater were detached and not on the floor. I know, but there is a difference between an end cap and a pipe, a connecting pipe. Both were standing on the floor. So if you have an end cap, you usually are capping off a line so the gas doesn't flow out of that line. And the connecting pipe is what you use from the main line in to whatever service is being received by a furnace or water heater. So I'm confused a little bit by the description of end cap, and then we find apparently Mr. Murphy is saying the evidence shows that the tenant, knowledgeable as the tenant is, and with a pipe wrench, saw a connecting pipe lying down there and took it upon himself to connect it to apparently the water heater after having shut off the mains. So if the mains are open, the gas is allegedly, is what I think the state's saying, is flowing through that open pipe. So I'm just curious. It just doesn't always connect. Based on my understanding of the record, it is the gas pipes and the end caps were found on the floor of the mechanical area. Okay, which we do. Okay. Thank you. The first issue is whether the child judge should be at his discretion in admitting the videotaped statement of Nicholas's prior inconsistent statement as substantive evidence. But first and foremost, the people would like to point out that this issue has been waived. The defendant failed to object at trial, and again, that was a trial motion. And also, the defendant does bring up plain error in his reply brief, and again, that's the first time he brings it up, which is a clear violation of Supreme Court Rule 341H.7. But even if not waived, the defendant's argument is without merit. Persuading 2-5-115-10.1, a witness's prior inconsistent statement is admissible as substantive evidence if it is inconsistent with his trial testimony, the witness is subject to cross-examination, the statement is shown to have been accurately recorded, and the statement narrates an event within the witness's personal knowledge. In this case, all four were present. And the main issue today is whether Nicholas's statement fulfilled the element of personal knowledge. The state states that it clearly did show that it fulfilled personal knowledge. Nicholas did make a couple of statements during his testimony, one being that he picked up his father, the defendant, the day of the incident, and the defendant was clearly intoxicated. That's a first-hand account of personal knowledge. And next, Nicholas testified that it involved the gas line. In this statement, he never mentioned anything that the defendant told him that, or confessed that, or admitted that. He just stated clearly that he thinks it had something to do with the gas line. Well, your opponent says, you know, personal knowledge, that is in the section, right? It says personal knowledge. He's saying that that has to be observation. That is not how the state used it, or the case law. I can imagine the state doesn't view it that way, but, I mean, how do you address that question? Sure. When Nicholas stated that he thinks it involves the gas lines, that was his speculation. He was there present the day of, he smelled the gas like everyone else the day of, and he was just assuming it had something to do with the gas lines. In no time, or in the record, does it show that the defendant told him that it involved the gas lines. What if the defendant had told him? Is that personal knowledge? I mean, that would not be classified as personal knowledge. But, I mean, the record clearly shows that in no point in time did Nicholas ever associate that statement with the defendant. So you're agreeing with the opposing counsel that hearing statements and repeating statements made by the defendant are not permitted under personal knowledge criterion because they're not observations. No, if the defendant admitted that he removed the eye caps, that would not be admitted, but that never occurred. Right. So, but the other statements that he's relating defendant made. Those were within his personal knowledge, and those were accurately entered into evidence. As the defendant stated, he stated the defendant's warning to stay away from Kaboom was hearsay evidence, but clearly based on our brief and the case law, People v. Wilson and People v. Saunders, that's a declaration of intent. That's a future event. He stated that before anything actually occurred. So that would be entered in, and again, that's in no way, shape, or form of any type of admission by the defendant. He just stated to his son Nicholas to stay away from Dreamer the day of the incident. And again, he stated to Nicholas that he would take care of the defendant, or the tenant, I'm sorry. And again, that is a declaration of intent, which is clearly admissible, as stated in our brief in People v. Wilson and People v. Saunders. So the people find that all statements made by Nicholas the day of the trial were actually within his personal knowledge. What does the state view as the conduct that you think you've established beyond a reasonable doubt that the defendant engaged in? I'm sorry, can you repeat that question? The conduct? Yes, what do you say is the conduct that the defendant engaged in that you established beyond a reasonable doubt? The evidence showed that the defendant did commit reckless conduct by- I'm asking not the conclusion. What is the conduct that the defendant, you say, engaged in beyond a reasonable doubt? Just the conduct. He removed the N-gas the day of the incident, which resulted in the gas leak. So that was the intentional conduct. That's intentional reckless conduct. Well, that's the intentional conduct. Then you have to establish whether that's reckless or not, right? Correct. With a conscious disregard for the safety of others, right? Correct. I'd like to go back just for a minute to what constitutes the personal knowledge. The law draws a distinction between statements that are admitted for the truth of the statement and statements that are admitted for another purpose. And I wonder if in the context of personal knowledge, whether the hearsay statements are actually admitted for the truth of them, or are they admitted for the purpose of determining how the son drew his conclusions about what he testified to. I don't know if that's a distinction without a difference at this point, but I just wondered. The state is not choosing to enter in the hearsay statements as impeachment evidence, as the defendant is suggesting. These are statements that are being brought in as substantive evidence. And, therefore, all the statements made by Mick was that they only encompass information, in fact, that he had personal knowledge of. And, therefore, it fulfills that requirement to be brought in as substantive evidence. But, I guess, Justice McDade, it seems to me, is asking. We're back to, I think you agreed with the closing counsel, that personal knowledge has to have an observing component. Am I correct? I mean, it has to be within the witness's knowledge. Not unnecessary. I mean, he doesn't have to physically observe. I'm sorry, ma'am. What is it that's within the son's knowledge? The son did witness his father the day of the incident. The son was present. What did he actually see of his father? He witnessed this. What do you mean by witnessed? They intoxicated his father. They saw his father drunk. He picked up his father the day of the incident. His father was clearly intoxicated at that time. And that's an observation. That is an observation. Nicholas was present the day of at Draymer's Pizzeria enough to witness that there was some sort of gas leak, which was occurring at the establishment. And that observation was a no-difference observation, right? Smell. Infected. Okay. And then Nicholas also had a discussion with his father the day of the incident on the way back home, and that's when his father clearly told him. Okay. Now we're getting into something that we're – is it – now we're getting into this greater. Is that an observation, or is that an out-of-court statement? That – the state feels that that would be a declaration of intent, as stated in case law that was out-of-court by the people, the people versus Wilson and people versus Saunders. So you're saying that's a state of mind, that that statement goes to state of mind of the defendant? A declaration of intent. Now, opposing counsel says that has to be before an action is taken. State's advisory. People's advisory. Okay. Do we have some discussion somewhere or some case law that says state of mind after an action is – Well, these statements were not made technically after the incident. It occurred when defendant was picked up by Nicholas on the day of the incident. But you're going back to conduct that apparently you're leaving, I think, one to imply conduct that was engaged in before he was picked up and referring to statements that were made after he was picked up by his father, which is after an alleged conduct that you say was reckless that you've charged him with. What defendant stated to Nicholas did not encompass anything that involved an admission of any sort. Defendant did not tell Nicholas that, yes, indeed, I did remove the eye caps and I'm the – there is a natural gas leak. I am the one who did it. All defendant did that day was tell Nicholas to stay away from January 23 because it was going to come boom and then Nicholas asked about the tenant and he said, don't worry, I'll take care of it. Well, a skeptic would say all you really have here is you have apparently a disconnected pipe to a water heater with the connecting pipe lying there and apparently if anybody really knows what an end cap is in this whole mess, there's an end cap. Okay. That's really what we have objectively. That's what we have third parties testifying to, a tenant testifying to that. And do you have a fireman or a policeman that sees something down there? Correct. There's a detective and a police officer. And what do they actually testify they see? They see the end caps on the floor. On the floor because we have now a tenant plumber who's connected up a water heater, which may or may not have been connected in the first place. That could have been – the line could have been capped with an end cap. Okay. And we have the defendant present who's drunk. Defendant was the only one that has been proven to be there at Draymond Street three of the day of the incident. And he was the only one – Where was the tenant? The tenant admitted he was there. But defendant was the only one who had access to that area where the missing caps were found. And defendant also was the only one who had access to that area and defendant was present that day of. Do you think you could make this conviction without any of this hearsay being admitted? Yes. You can't say that the defendant was the only person who had access. I mean, the evidence is that Mr. Campbell had access if he went in and found the things were on the fifth floor. Campbell did not have access to that particular area in the mechanical room within Dreamers Pizzeria. And the only way that Campbell gained access to that area was through Matthew, which was defendant's relative. Matthew arrived on the day of, was preparing to open up the establishment and smelled natural gas and saw Campbell present at the same time and they both proceeded to the mechanical area room where the end caps and pipes were. And where was the dad at this time when Matthew appeared? It appears that the defendant was back at his home because Nicholas picked him up initially in the morning and drove him back to his home. Okay. And then came back to the pizza place. I'm sorry, the defendant, did he come back to the pizza place? No, the son. The son stops by the pizza place, sees his dad intoxicated, he takes him home. Then he comes back. Okay. And it's at that time he allows the tenant access to the place where the water heater is, correct? Matthew, yes. That's the son, Matthew, right? No, Matthew is not the son. Nicholas is the son. Matthew is the relative of the defendant. Okay, so who's actually connecting this pipe? Isn't it the tenant? It was Matthew who went with Campbell to the mechanical area. Okay, so it's Campbell who connects the pipe. Along with Matthew. So Campbell only gets there because the son and this Matthew come back to the pizza place and open up the door to the mechanical room and let Campbell in. It's not very clear if actually Nicholas was present at the time that Matthew and Campbell were. Okay, so Matthew was the one who locked Campbell in to the mechanical room. I have a question about your strategy that you've adopted in this appeal. After reviewing portions of the record, I don't think it's clear whether the court was admitting the videotape evidence substantively or for purposes of impeachment. And defense counsel has addressed it under both possibilities. When I look at the transcript of what the prosecutor was saying to the judge before he ruled whether certain portions of the videotape would come in, the prosecutor says, so I do believe that all of it, I do believe it's impeachment. I do believe it's inconsistent with what he said. And then she goes on to say, and I do believe it should come in substantively. Why have you abandoned the possibility that a portion of these multiple statements that defense counsel objected to could have been properly admitted for purposes of impeachment? The state found that it fulfilled all the requirements necessary to be brought in as substantive evidence and has chosen to use Nicholas' testimony as substantive evidence. Thank you. Thank you, Ms. Chowdhury. Thank you. Mr. Murphy, you may reply. Mr. Murphy, can you follow up to my question? Was there an instruction given to the jury as to how to handle testimony admitted for the limited purpose of impeachment? Do you know? Judge, I thought in one of the incidents where certain statements were admitted, there was an instruction given that it was only for impeachment. And then with regards to the videotape, the instruction was not given, so I assume the trial court was admitting it as substantive evidence based upon that. But that's an assumption on your part, I think, that you recognize in your brief. Yes. The court did not indicate. You made a very cursory ruling, actually. I think it could have been more clear. Because the videotape issue came up mid-trial and defense counsel and the prosecution were trying to edit it by agreement? Yes. All right. I just wanted to clear up a couple of concerns that Your Honor may have had. First, with regards to who had access to the premises, I think it's inappropriate to say that the record shows the defendant was the only one who had access. First of all, it's the son, Nicholas, who came in the morning and picked up father, who he found to be intoxicated and sleeping on the couch. So that son had access to the building. Matthew, another relative, came later. He had keys. He had access to the building. How many other relatives have access? Also, the record shows that the defendant ran this business not as a sole proprietor but along with other people. I don't know how many other people. That's not in the record either, but I think it's a reasonable inference that if he's running a business along with other people, they have access to the premises as well. Also, Your Honor, Tim Powers did not come and see four end caps lying on the floor. What had happened was they went and awoke, awakened the tenant, Christopher Campbell, had him come down into the building, and Tim Powers said, What happened? What did he do? And he pointed to an area where the pipes are already reconnected, and he says, well, show me what you did. And he shows them where these pieces were on the floor and what he reconnected. And that's just something I wanted to clear up. Judge, I think it's very clear. I'm not sure if counsel was agreeing or disagreeing, but it's clear in the case law that the personal knowledge requirement means that the substance of the statement, the subject matter of the statement is what has to have been observed by the witness who is testifying. In other words, in many cases, if the defendant or if the witness was in a car or had the ability to observe or hear certain events, then they had the personal knowledge and could therefore testify. But if it's just narrating what was told to them afterwards, that does not satisfy the personal knowledge requirement. Did this witness have personal knowledge because he heard his father say the building is going to go kaboom and I'm going to take care of it? And that's where the confusion comes in. I think that's taught a lot of logical, Judge. The personal knowledge would be witnessing the events that supposedly was going to make this go kaboom or what the father did to cause the emission of natural gas. He would have had to have witnessed the father doing something. But what makes this statement relevant is it seems to indicate an intent. It's an admission against his interest if he made the statement, not whether it was true or not, but whether simply the statement was made. As a follow-up to Justice E. Faye's question, why was the fact that he heard his father make this statement that didn't convert it into personal knowledge that the son had? Because I don't think that's a saying if the defendant is observing the place is going to go kaboom. Nowhere in that statement does it show an intent or state of mind. I mean, it's not an admission because it's only an observation that there's a smell of gas. Okay. What you're trying to say is it's not a personal observation the person made the statement. Correct. It's a personal observation of the subject matter of the statement the person made. Correct. That would allow it to be admitted as substantive evidence, as hearsay. Correct. Okay. But there are other exceptions to hearsay, are there not? Certainly. Okay. And is it not a state of mind exception? If this statement made by the defendant, out-of-court statement was made by the defendant, and it's reported by the son, can that be admitted? Under what exception? I guess my trouble is maybe I'm equating state of mind with an intent because I don't see that in the statement. You know, stay away from there, it's going to go kaboom. Regardless, Judge, I don't think that's the damning statement. Again, just even if you have that statement, don't go back, it's going to go kaboom. I don't think that's an admission of any wrongdoing or any criminal act, period. That's what you would argue to the jury. Correct. Or to the court. Sure. The statements that were in here— Doesn't mean he took the end caps off. Correct. It's, again— He might have observed that they were off, and so that's why he said it's going to go kaboom. Doesn't mean he took it off, is your argument. It's that because of the jury to the court, right? Correct. Now let's go to the statement you really think is damning. The statement I really think is damning is—and the way counsel put it is that the statement wasn't made— it wasn't an admission of defender or anything like that, but the response was to a question that the officer made to Nicholas Martin. Did your father—did he say he did anything specific, or what did he do specific to the visits? And that's where the statement, it has something to do with gas lines, comes in. And that's where the personal knowledge is required. Even if you take the statement as true, that means father said something to him about gas lines, doing something to gas lines, something being done to gas lines. Just because he told that to the son, that's not the personal knowledge requirement. It's got to be the subject matter of the statement that as far as did you do anything specific to the business, it has something to do with gas lines. Nobody witnessed David Martin do anything with any gas lines. The son didn't witness the dad do anything. He just picked him up after the alleged fact and brought him home. But the statements were the subject matter of the statement, were they not? No, that's where we're getting circular, Judge. In order—the defendant made that statement. It depends on how we construe it because we're not on a specific statement from the defendant. No, I'm talking about Nicholas's statement. Correct. The subject matter of Nicholas's statement was the statements that were made to him by his father. Correct. Okay, he had personal knowledge of those statements. Not of the subject matter of the statements. He has to personally witness the events that are the subject matter of the statement. Can we go back to the statement? Let's start again. Yes. What is the statement? It was in answer to a question on the videotape by the officer. The officer— And what was the question the officer asked? Did your father do anything—did he say he did anything specific to the business? Did he do anything—because they're asking about a planned arson. What was the question? Don't interpret it. It was what? I believe, Judge, the question was did your father say he did anything specific to the gas lines? Oh, it was that specific? Specific to the business. Okay, to the business. Correct. And— The response was it had something to do with gas lines. I don't think I inferred that. So there's not an explicit statement from the defendant. I don't think I inferred it, but I think it had something to do with the gas lines. Yes. And so you're saying he is still only reporting a statement or some statements made by his father to him, the subject matter of which he thinks it had to do with the gas lines. Correct. And you're saying that doesn't come in under substantive because it's not personal knowledge by observation. Clearly. Could it come in under any other exception? I don't believe so. I don't believe it's a state of mind. I don't believe it's an admission of anything. And even if it were an admission, again, it's after the fact, and the case law clearly shows that unless you have the personal knowledge, I don't think this comes in. Okay. Isn't the distinguishing factor here that the statements that were made by the father, the defendant, in Nicholas's presence, did not describe actions that he had taken? All they said, all he said, were tangential kinds of things. And that's all that Nicholas was reporting. These statements that Nicholas made were not being used to prove the actions that were taken by the defendant. They were only taken to prove what the defendant said to him that day. So it would seem that they would be admissible under 115-10-110.1. I disagree because I think that the state used them as admissions of guilt. I don't think that they're just, you know how to put it, statements as to what, I think that the state used those as admissions of guilt and the reasonable inferences from those statements. Okay. Thank you. Counsel, I have a question. I think there's some more questions. I have to apologize for my senior moment. I think this was a bench trial. It started as a jury trial. And then the jury was waived in the middle. When did this come in, the videotape issue come in? Was it still a jury trial at that point or not? Judge, I can't tell you for sure off the top of my head. I believe it was prior to waiving. Thank you for clarifying that. Yes. I think the waiver was after the state rested. And then the defendant waived the jury when it was due. Thank you. Because the judge didn't give a basis for his ruling, whether he was admitting these portions that defense counsel objected to substantively as a blanket policy, or whether some were admitted for purposes of impeachment and some substantively, because it ultimately was decided by a judge, aren't we allowed to presume he only considered the evidence if some were only viable as impeachment, and he only properly considered those as impeachment and not substantively? Absolutely, Judge. I think the court can affirm the trial court on any basis in the record, whether or not it's... Do you view the state's concession or tactical decision to argue that this was only offered for purposes of substantive evidence in terms of our role on review? How do I view their strategy? Are we locked into viewing this and considering it only as substantive evidence because the state has adopted that position on appeal, regardless of what the position down below may have been? I would like to say that's true, Judge. I think my gut tells me that no, you're still allowed to affirm the trial court on any basis in the record, whether or not his reasoning was correct or not. And that is why you pulled back on your second issue, isn't it? Well, Judge, I mean, I have an argument. It's in the brief. The reason I didn't argue it today was because the state seemed to not want to focus on that. I understand, but back to Justice Wright's questions and observations, assuming that ought to be true, okay, under the state of the law and under the facts of this case. Your second issue is the one that says, so be it, Trial Judge Erb. There's nothing in this record to establish beyond a reasonable doubt. Even if this hearsay came in and was allowed to come in under an approved exception, maybe not substantive, but another exception. Or, even if it was presented to the trial judge, and there's no exception out there that would allow him to consider it, we'll assume he didn't. And we can. So, you're saying that being the case, there's just nothing here to connect him with removing the end pipes? Absolutely. That's my priority. That's the focus, is sufficiency of the evidence either way. But I do believe the court heard. I do appreciate your candor and your insight regarding this concession or this position by the state. I'm not so sure that I adopt the view that what they say in their brief should be considered meaningful. I think when you concede something like this, there have to be ramifications. But I do appreciate your candor. I don't think there are any questions. Thank you. Thank you. Thank you, Counsel Balls, for your fine arguments in this matter this morning. It will be taken under advisement.